IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 06-00119-01-CR-W-SOW |
| ) | |
| JASON D. GRAY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is Defendant's Motion to Suppress Evidence on grounds that the evidence was seized in violation of the Fourth and Fourteenth Amendments. Defendant moves the court to suppress the firearm recovered from the vehicle he was driving following an April 4, 2006, traffic stop, arguing that it was "seized as a direct result of an illegal search." Defendant also seeks to suppress his post-arrest statements as "fruit of the poisonous tree."

*I. BACKGROUND*

On April 4, 2006, Kansas City, Missouri Police Officer Sean Clarke observed that the rear license plate of a white 1989 LaSabre driven by Defendant was not illuminated as required by a municipal traffic ordinance. He, therefore, stopped Defendant and informed him of the violation. Defendant told Officer Clarke that he did not have a driver's license. Officer Clarke called Defendant's information into the dispatcher and learned his license had been suspended. Accordingly, Officer Clarke placed Defendant under arrest for driving while suspended. He then searched the LaSabre and found a firearm under the front driver-side seat.

1

An indictment was returned on April 4, 2006, charging Defendant with being a felon in possession of a firearm. On August 7, 2006, Defendant filed a motion to suppress evidence (Doc. No. 26). The government responded to Defendant's motion on August 21, 2006 (Doc. No. 29). I conducted an evidentiary hearing on September 7, 2006. The government appeared by Assistant United States Attorney Stefan C. Hughes. Defendant was present, represented by appointed counsel Laine T. Cardarella. The government called Kansas City, Missouri Police Officer Sean Clarke and Kansas City, Missouri Police Officer Joel Ritchie to testify. In addition, the following exhibits were marked and admitted into evidence:

> Government's Exhibit 1:   Videotape of Incident;
> Government's Exhibit 2:   Transcript of Video.

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. On April 4, 2006, Kansas City, Missouri Police Officer Sean Clarke and his field training officer, Officer Joel Ritchie, were on patrol duty together (See Tr. at 3, 25; Gvt. Exh. 1). As a field training officer, Officer Ritchie (a tenured officer) was responsible for training, evaluating and receiving Officer Clarke (a recent police academy graduate) (Tr. at 25). Because it was a slow night, Officer Ritchie asked Officer Clarke to work on finding probable cause to make traffic stops (Tr. at 21).

2. At approximately 3:40 a.m., Officers Clarke and Ritchie were traveling westbound on 31st Street (Tr. at 3-4, 26). Officer Clarke observed a white 1989 Buick LaSabre,

2

license plate number 996 ZLK, traveling eastbound on 31st Street (Tr. at 4, 26). After passing the vehicle, Officer Clarke turned his head, noticed that the LaSabre's rear license plate was not illuminated, and turned the patrol car around (Tr. at 4, 20-21). At this point, Officer Ritchie also noticed that the vehicle's rear license plate was not illuminated (Tr. at 26). Officer Clarke stopped the LaSabre at approximately 38th and Kensington (Tr. at 4, 21).

3. After making the stop, Officers Clarke and Ritchie exited the patrol car and approached the LaSabre (Tr. at 5; Gvt. Exh. 1). Defendant was the driver of the vehicle (Tr. at 4-5, 26-27). Officer Clarke told Defendant that he stopped him because the vehicle's rear licence plate was not illuminated (Tr. at 5; Gvt. Exh. 1; Gvt. Exh. 2). Failure to illuminate a rear license plate is a municipal traffic ordinance violation; as a result, Defendant was issued a citation (Tr. at 5, 33). Additionally, Defendant informed Officer Clarke that he did not have a driver's license (Tr. at 11; Gvt. Exh. 1; Gvt. Exh. 2).

4. The officers returned to the patrol car and, pursuant to standard operating procedure, Officer Clarke radioed in Defendant's information to the dispatcher and learned that Defendant's driver's licence was suspended (Tr. at 6, 13-14, 27; Gvt. Exh. 1). He and Officer Ritchie then returned to the LaSabre; Officer Clarke asked Defendant to step out of the vehicle and placed him under arrest for driving while suspended (Tr. at 6, 13, 15, 27; Gvt. Exh. 1). Officer Clarke did not expressly tell Defendant he was under arrest or advise him that he was not free to leave, but Defendant was not free

3

to leave from this point forward (Tr. at 15, 18, 19; Gvt. Exh. 1). Incidently, Defendant was also issued a citation for driving while suspended (Tr. at 7, 33).

5. Officer Clarke and Officer Ritchie both testified that it is not mandatory for an officer to arrest an individual who is driving with a suspended license (Tr. at 15, 19, 30). An officer may decide not to take such an individual into custody and may issue him or her a citation instead (Tr. at 15, 30). If the individual is not taken into custody, he or she would not be allowed to drive away from the scene (Tr. at 31). Under these circumstances, an officer could (a) have the vehicle towed, (b) make the individual leave on foot, (c) have the individual call a valid driver to drive the vehicle away, or (d) give the individual a ride home (Tr. at 31). In instances where the vehicle is towed, an officer would first perform an inventory search (Tr. at 31).

6. Because driving with a suspended license is an arrestable offense, Officer Clarke chose to arrest Defendant and take him into custody (Tr. at 15). Officer Clarke made decisions independently during training; his decisions were not typically subject to Officer Ritchie's approval (Tr. at 17, 27). Officer Ritchie could, however, overrule Officer Clarke's decisions if he wanted to do something illegal (Tr. at 32). In the instant case, Officer Ritchie theoretically could have prevented Officer Clarke from taking Defendant into custody if he had thought there was no reason to do so (Tr. at 32-33).

7. After making the arrest, Officer Clarke searched Defendant's person (Tr. at 6; Gvt. Exh. 1). When he was done, Officer Ritchie took Defendant to the patrol car (Tr. at 6; Gvt. Exh. 1). Although Defendant was not placed in handcuffs, he was not free

4

Case 4:06-cr-00119-GAF   Document 34   Filed 09/18/06   Page 4 of 11

to leave (Tr. at 17, 19, 28, 33). Officer Clarke had not felt it necessary to handcuff Defendant since Defendant had been very cooperative (Tr. at 18).

8. En route to the patrol car, Officer Ritchie told Defendant, "We could take you to jail for this, but we're not" (Gvt. Exh. 1, at 03:58:33). At the time Officer Ritchie made this statement, it was not his decision whether Defendant was arrested (Tr. at 28). Officer Ritchie neither intended for Officer Clarke to hear what he said, nor did Officer Clarke overhear Officer Ritchie's statement to Defendant (Tr. at 23, 28).

9. Officer Ritchie stood with Defendant at the patrol car while Officer Clarke searched the LaSabre (Tr. at 6, 20; Gvt. Exh. 1). Defendant had not given the officers permission to conduct the search (Tr. at 18, 20). Officer Clarke recovered a fully-loaded .357 Magnum handgun from underneath the front driver's seat and alerted Officer Ritchie to his find (Tr. at 7, 22, 23, 29; Gvt. Exh. 1).

10. Officer Ritchie then placed Defendant in handcuffs (Tr. at 22, 24, 29; Gvt. Exh. 1). He felt it was necessary to do so because the situation escalated when Officer Clarke found the gun (Tr. at 33). Officer Ritchie did not know if finding the gun would cause Defendant to fight, run or to grab another weapon (Tr. at 33).

11. Defendant immediately told Officer Ritchie that he did not have a gun (Gvt. Exh. 1, at 04:00:05). Officer Ritchie asked Defendant if he had ever been in jail, to which Defendant responded he had spent some time in jail for drugs (Gvt. Exh. 1, at 04:01:44). Defendant also stated the LaSabre was a borrowed car and that the gun was not his (Gvt. Exh. 1, at 04:02:16). When asked if he owned any guns, Defendant responded that he did not (Gvt. Exh. 1, at 04:08:14).

12. Officers Clarke and Ritchie learned that Defendant was a convicted felon (Gvt. Exh. 1). When Officer Clarke informed Defendant of this discovery, Defendant stated, "I ain't no felon" (Gvt. Exh. 1, at 04:28:52). He advised Officer Clarke that he received an "SIS" and that he was "not on paper" (Gvt. Exh. 1).

13. The LaSabre was ultimately towed from the scene (Tr. at 22; Gvt. Exh. 1). Officer Clarke inventoried the car before it was towed (Tr. at 22-23; Gvt. Exh. 1).

14. The surveillance video filmed from the officers' patrol car recorded the events that transpired on April 4, 2006, between Officer Clarke, Officer Ritchie, and Defendant (Tr. at 7-8; Gvt. Exh. 1). Although Defendant's rear license plate appears to be illuminated in the video, such illumination is a result of the patrol car's headlights and spotlights, as well as the overhead lights on the street (Tr. at 11). Defendant's rear licence plate was, in fact, not illuminated (Tr. at 11).

### III. LEGAL ANALYSIS

Defendant makes a Fourth Amendment challenge to all evidence and statements obtained following the April 4, 2006, traffic stop. Analysis with respect to each category of evidence will be conducted separately.

#### *Physical Evidence*

Defendant seeks to suppress the firearm Officer Clarke seized from the LaSabre, arguing the warrantless search was not supported by probable cause and was thus "unreasonable." The government disagrees, maintaining that the search was justified both as a search incident to arrest and as an inventory search. Before considering either of these justifications, however, the court must first examine the lawfulness of the actions preceding the search.

6

Officers Clarke and Ritchie first made contact with Defendant when Officer Clarke stopped Defendant because the rear license plate of the LaSabre was not illuminated. An officer "who sees a traffic violation has probable cause to stop the vehicle." United States v. Williams, 431 F.3d 296, 298 (8th Cir. 2005). According to the Kansas City, Missouri, Code of Ordinances, failure to illuminate a vehicle's rear licence plate is a municipal traffic violation.[1] § 70-139. Here, while traveling westbound on 31st Street, Officer Clarke turned his head and noticed that the eastward-bound LaSabre's rear license plate was not illuminated. Having personally observed this violation, Officer Clarke had probable cause to stop the vehicle.

Next, Officer Clarke approached the LaSabre and advised Defendant why he had been stopped. Defendant volunteered that he did not have a driver's license. Officer Clarke then obtained identifying information from Defendant and returned back to the patrol car to process Defendant's information. Because "an officer making a traffic stop does not violate the Fourth Amendment by asking the driver his destination and purpose, [or by] checking the license and registration," United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002), Officer Clarke's actions were lawful.

The police dispatcher informed Officer Clarke that Defendant's driver's license was suspended. As a result, Officer Clarke returned to the LaSabre, removed Defendant from the vehicle, and placed him under arrest for driving while suspended. "Arrests for traffic violations and other minor offenses are consistent with the Fourth Amendment." United States v. Chauncey, 420 F.3d 864, 871 (8th Cir. 2005)(citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)); see also

---

[1] Section 70-139 provides, in pertinent part, "The required license plate or temporary permit shall be fastened to a vehicle in such a manner as to be entirely unobscured and unobstructed, with all parts thereof plainly visible and kept reasonably clean, an fastened so that the letters or numerals are right side up and the plates do not swing."

7

United States v. Searcy, 181 F.3d 975, 979 (8th Cir. 1999)(holding police officer could lawfully arrest individual driving with a suspended license).

Defendant was "arrested" despite never having been expressly told he was under arrest. United States v. Rose, 731 F.2d 1337, 1342 (8th Cir. 1984)("[D]etermination of whether an arrest has occurred for Fourth Amendment purposes does not depend on whether the officer[ ] announced [he was] placing the suspect[ ] under arrest."). Likewise, Defendant's arrest was not dependant on either officer telling him he was not free to leave. The decision whether to arrest Defendant belonged to Officer Clarke as the arresting officer, and he chose to do so after informing Defendant of the violation and removing him from the vehicle. Officer Ritchie's statement that Defendant would not be taken to jail is not fatal since driving while suspended is an arrestable offense and Defendant's arrest was not his decision.

Having determined the events leading up to and including Defendant's arrest were lawful, the court must next consider whether Officer Clarke's warrantless search of the LaSabre is justified as either a search incident to arrest or an inventory search. I find that the firearm recovered during the search could be found admissible under either principle.

A search must be conducted pursuant to a warrant in order to be "reasonable" under the Fourth Amendment unless one of the "few specifically established and well-delineated exceptions" to the warrant requirement exists. United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993)(quoting Katz v. United States, 389 U.S. 347, 357 (1967)); see also U.S. CONST. amend. IV. One such exception is a search conducted incident to lawful arrest. Katz, 389 U.S. at 357; see also New York v. Belton, 453 U.S. 454, 459-60 (1981); Searcy, 181 F.3d at 979. An inventory search is also an exception to the warrant requirement. Marshall, 986 F.2d at 1173-74.

8

When a law enforcement officer "makes a lawful custodial arrest of an automobile's occupant, the Fourth Amendment allows the officer to search the vehicle passenger compartment as a contemporaneous incident of arrest." United States v. Poggemiller, 375 F.3d 686, 687 (8th Cir. 2004)(citing Belton, 453 U.S. at 460). The Eighth Circuit has interpreted the "passenger compartment" to include the area within an occupant's reach. Id. at 688. This principle applies "even when an officer does not make contact until the person arrested has left the vehicle." Id. at 687 (citing Thornton v. United States, 541 U.S. 615, 617 (2004); United States v. Snook, 88 F.3d 605, 608 (8th Cir. 1996)).

In this case, Officer Clarke did not have a warrant to search the LaSabre. He, instead, searched the vehicle following Defendant's lawful arrest for driving while suspended. Officer Clarke found the firearm under the front driver-side seat, a location that would have been well within Defendant's reach when he occupied the vehicle. Therefore, the firearm should be found admissible pursuant to this first exception to the warrant requirement.

The firearm could similarly be found admissible as a result of an inventory search. Under this second exception, police may "lawfully conduct a warrantless search of an impounded automobile that is designed to produce an inventory of the vehicle's contents." Marshall, 986 F.2d at 1173. Here, Defendant had been arrested for driving with a suspended driver's license and could not legally drive the vehicle from the scene. See United States v. Stephens, 350 F.3d 778, 780 (8th Cir. 2003). Accordingly, Officer Clarke was justified performing an inventory search before the vehicle was towed. Defendant's motion to suppress should be denied with regard to physical evidence.

9

Case 4:06-cr-00119-GAF   Document 34   Filed 09/18/06   Page 9 of 11

*Statements*

Defendant also argues that his post-arrest statements should be suppressed as "fruit of the poisonous tree." The record is unclear as to which statements Defendant seeks to suppress. His written motion does not identify any such statements and there was no testimony adduced during the suppression hearing on this issue. Review of Government's Exhibit 1 reveals that Defendant made various statements to Officers Clarke and Ritchie following his arrest and, specifically, after the gun was found. The government's response in opposition to Defendant's Motion to Suppress also states that after Defendant was transported to the police department and advised of Miranda rights, he "admitted to owning the gun and said he had placed it under the driver's seat sometime that weekend." (Doc. No. 29, at 2). Because, under the above analysis, neither the stop, arrest nor search violated the Fourth Amendment, any statements obtained from Defendant should not be suppressed as "fruit of the poisonous tree."

For the above-stated reasons, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying Defendant's Motion to Suppress Evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ Robert E. Larsen
                                              ROBERT E. LARSEN
                                              United States Magistrate Judge

Kansas City, Missouri
September 15, 2006